NEW YORK STATE ELECTRIC & GAS CORPORATION, Appellant and Respondent, *v.* CITY OF PLATTSBURGH et al., Respondents and Appellants.

Argued October 11, 1939; decided November 21, 1939.

452

*Wallace E. Pierce, Patrick J. Tierney, C. Edward Paxson and Jesse J. Holland* for plaintiff, appellant and respondent.

*Harry P. Kehoe, Corporation Counsel,* for defendants, respondents and appellants.

HUBBS, J.  The defendant City of Plattsburgh, desiring to avail itself of the opportunity of securing funds from the Federal government, in March, 1936, started proceedings to authorize the construction of a municipal electric power plant.  The Common Council adopted a local law authorizing its construction.  On May 15, 1936, the local law was

approved by the electors of the city at a special election. The proceedings were strictly in accordance with the provisions of article 14-A of the General Municipal Law (Cons. Laws, ch. 24). The local law fixed the estimated cost at $520,000, and the maximum cost at not to exceed $594,000. It provided a plan for financing the project by means of a grant from the Federal Emergency Administration of Public Works of $234,000, being forty-five per cent of the estimated cost of $520,000, the balance of fifty-five per cent of $520,000, the estimated cost, to be raised by the sale of bonds in the amount of $286,000.

The local law provided that the project should be constructed substantially in accordance with plans approved by the Common Council and on file and subject to inspection. It also provided that the Common Council should pass the necessary resolutions to authorize the issuance, sale and execution of the bonds, which should constitute a general obligation of the city. In short, the city took the necessary legal proceedings. The city has not advertised for bids for the construction of the project, made any contracts therefor or sold any of the bonds.

This action, brought by the plaintiff company, is to restrain the city from issuing and selling the bonds. The trial court decided in favor of the plaintiff and enjoined the city from proceeding with the undertaking. The Appellate Division modified the judgment of the trial court and decided that the city might proceed with the project, but directed that it could not issue bonds for an amount in excess of $82,320.54, plus $24,000, if and when outstanding bonds in that amount are retired in accordance with provisions already made therefor.

The trial court found that the issue of bonds to the amount of $286,000, the amount necessary under the estimated minimum cost of construction, would result in an indebtedness of the city in excess of ten per cent of the assessed valuation of its real property and, therefore, that the proposed bond issue was in violation of article VIII, section 10, of the State Constitution as it existed in 1938. (See now art. VIII, § 4.)

The Appellate Division reached the conclusion that the city still possessed borrowing capacity of $82,320.50 plus $24,000 if and when outstanding bonds to that amount have been paid in accordance with provisions already made therefor. It, therefore, decided that the city might proceed with the project but that it could not issue bonds therefor in a greater amount than stated. It reached such decision upon the ground that the city could not be restrained until it had exhausted its borrowing power or entered upon contracts which disclosed that it had contracted beyond its borrowing power.

If we assume that the Appellate Division was right in holding that the sewer bonds hereafter referred to constituted an indebtedness and that the city possessed capacity to borrow only $82,320.54, we might not be willing to agree with the statement that as a matter of law this action was prematurely brought.

If, on the other hand, the city possessed borrowing capacity of $269,000 over and above its present indebtedness, an entirely different factual situation would be presented. In determining the amount of the city's borrowing capacity over its present indebtedness it is necessary to decide whether certain sewer bonds to the amount of $187,000 constitute an indebtedness of the city.

In 1938 the city, acting under the provisions of the General Municipal Law, article 14-C, sold to the Federal government sanitary sewer revenue bonds to the amount of $187,000. The city had a sewer system which was used without charge by property owners. Desiring to extend and improve its sewer system it procured from the Federal government a gift and issued and delivered to the Federal government for additional funds advanced, the sewer bonds in question. The bonds provided that they should be paid wholly from the revenue received thereafter from the sewer system.

It is conceded that all proceedings growing out of the issuance of those bonds and the construction of the sewerage system were in strict accordance with law. It is urged by

the plaintiff, however, that the bonds constitute an indebtedness of the city and should be included with all other conceded indebtedness of the city in computing the total amount which the city can lawfully contract as indebtedness under section 10, article VIII of the State Constitution as it existed in 1938 when those bonds were purchased by the Federal government. That question has been definitely settled by this court contrary to the contention of plaintiff. Section 10, article VIII of the State Constitution provides that no city shall be allowed to become indebted to an amount which shall exceed ten per cent of the assessed valuation of the real property of such city subject to taxation. The question here involved arose in the case of *Robertson* v. *Zimmermann* (268 N. Y. 52) and we decided that bonds issued by " Buffalo Sewer Authority " in accordance with the provisions of a statute similar to those of the General Municipal Law did not constitute an indebtedness of the city of Buffalo and should not be included with the other indebtedness of the city in computing and fixing the ten per cent over which the city could not lawfully become indebted under section 10, article VIII of the Constitution. The facts in that case and in the one at bar differ in minor respects, but the fundamental principles established by the decision in that case are controlling in this. (Cf. *City of Rochester* v. *Union Free School District*, 255 App. Div. 96; affd., 280 N. Y. 531.)

An entirely different situation exists in relation to the proposed issue of bonds to the amount of $286,000, the proceeds from which are to be used in constructing the proposed new electric system. Those bonds are to be paid, not solely from the revenue to be derived from the electric system, but from the general taxes levied upon all the taxable property within the city. They will, therefore, constitute an indebtedness of the city and must be included in ascertaining the total amount of indebtedness which the city may lawfully contract under the provisions of the Constitution. When so considered, after excluding the sewer bonds amounting to $187,000, it appears that the city has a leeway of

$269,000 before reaching the debt limit. The proposed issue of bonds for the electric system for $286,000 is, therefore, only $17,000 more than the present debt limit of the city. The estimated cost of the proposed electric system to be constructed in substantial compliance with the plans on file is $520,000. It may appear later that the system may be constructed in substantial compliance with such plans for at least $17,000 less than the estimated costs. If so, the bonds required to be issued would not exceed the city debt limit. Or it may happen that prior to the time for issuing the bonds the debt limit of the city may have in some way been increased.

The judgment of the Appellate Division should be modified by providing that the present debt limit of the city is $269,000 instead of $82,320.54 and as so modified affirmed, without costs.

CRANE, Ch. J., LEHMAN, LOUGHRAN, FINCH and RIPPEY, JJ., concur; O'BRIEN, J., taking no part.

Judgment accordingly.