In the Matter of DUDLEY T. HILL, Respondent, against BOARD OF EDUCATION OF CENTRAL SCHOOL, DISTRICT No. 2 OF TOWNS OF GLENVILLE, SCHENECTADY COUNTY, AMSTERDAM, MONTGOMERY COUNTY, and CHARLTON, SARATOGA COUNTY, Appellant.

Third Department, July 7, 1955.

334

*Roy W. Peters* for appellant.

*Richmond D. Moot* for respondent.

*Charles A. Brind, Jr., John P. Jehu, Elizabeth M. Eastman* and *George B. Farrington* for Lewis A. Wilson, as Commissioner of Education of the State of New York, *amicus curiæ.*

*Vandewater, Sykes, Heckler & Galloway, amicus curiæ.*

FOSTER, P. J. It has been determined by the Supreme Court at Special Term, in a proceeding under article 78 of the Civil Practice Act, that a bond resolution of the respondent board of education, dated November 12, 1954, is null and void. The declaratory judgment appealed from also permanently enjoins the respondent from constructing a new high school building, purchasing additional land therefor, and from issuing bonds of the district for such purposes.

The facts are not in dispute in any respect. Respondent-appellant is a board of education of a central school district. It duly called a special district meeting for April 12, 1954, and submitted to the electors of the district a proposition to acquire lands, construct and equip a new high school at an estimated cost of $2,266,000 to be raised by tax on the taxable property in the district and to authorize the issuance of bonds therefor. The proposition was carried by a majority vote, but not by a two-thirds vote of the electors present. Concededly the bonded indebtedness of the district at the time was in excess of 10% of the full value of all the taxable real property in the district. On November 12, 1954, the appellant board of education adopted a resolution to finance the project by the issuance of serial bonds in an amount not exceeding the sum voted at the district meeting. The resolution fixed no date for the issuance of the bonds, but it did recite that at the time of its adoption the outstanding indebtedness of the district, plus the proposed bond issue, after deducting the estimated building aid quota, would be less than 10% of the full valuation of the district property by reason of the fact that new assessment rolls, as equalized, were available for the purpose of computing the statutory debt limit. Thereafter this proceeding was brought by petitioner, who is a tax-

payer in the district, under article 78 for a judgment declaring the bond resolution adopted by the appellant board null and void, and for relief by way of injunction.

The Special Term held in effect that the proposition submitted to the electors of the school district on April 12, 1954, was lost because it was not passed by a vote of two thirds of the electors present. This determination was based upon the requirement set forth in subdivision d of section 104.00 of the Local Finance Law. It follows of course that if the Special Term was correct in this determination the bond resolution of the appellant board dated November 12, 1954, was null and void. It is appellant's contention that under this section of the Local Finance Law no determination with respect to the debt limitation of the district need be made until the actual issuance of the bonds is imminent. Under that theory, since the proposition received a favorable majority vote, the appellant board could proceed with the issuance of the bonds at a later date if at that time the total indebtedness of the district was under the statutory debt limitation. Stated in slightly different language the sole issue presented on this appeal is whether the indebtedness of a school district must be determined and considered at the date of a district meeting at which a proposition is submitted authorizing a board of education to expend money for the construction of a school, or whether the amount of such indebtedness may await determination and consideration at the time the bonds are to be actually issued.

Authority to submit such a matter to the vote of a school district is found in section 416 of the Education Law. This section provides in part: '' A majority of the voters of any school district, present and voting at any annual or special district meeting, duly convened, may authorize such acts and vote such taxes as they shall deem expedient * * * for the erection of new buildings ''. This section contains nothing with respect to any debt limitation. It merely provides in effect that a majority of the qualified voters may authorize the purchase of additional land, the construction of a new school building, and that the money required may be raised by a bond issue and paid by a tax against the district.

Subdivision d of section 104.00 of the Local Finance Law provides however as follows:

'' A school district, other than a school district in a city, having an aggregate assessed valuation of taxable real property of one hundred thousand dollars or over, * * * shall not issue bonds or bond anticipation notes, if the indebtedness of the

school district determined pursuant to section 137.00 of this chapter will exceed ten per centum of the full valuation of the real property subject to taxation by the school district, unless:

" 1. The tax voted to be collected in installments in relation thereto, or the proposition for the approval of a bond resolution in relation thereto, shall have been voted or approved, as the case may be, by a two-thirds vote of the qualified voters voting thereon in person at the meeting or election called for such purpose;

" 2. The Board of Regents shall consent thereto ".

Appellant's chief argument is that the proceeding against the board was prematurely instituted. It points out that the only statutory limitation is upon " issuance " of bonds after the proposition " shall have been voted " upon. The word " issue " has a rather clear and accepted meaning in this State when used with reference to bonds and notes. It means the delivery of such obligations against payment of the purchase price (*Brownell* v. *Town of Greenwich,* 114 N. Y. 518; *Zimmerman* v. *Timmerman,* 193 N. Y. 486). This construction is also fortified by the fact that any bonds issued pursuant to the Local Finance Law are negotiable instruments, and in the Negotiable Instruments Law " issue " is there defined as meaning " the first delivery of the instrument, complete in form, to a person who takes it as a holder." (§ 2.) Therefore in the absence of any statutory indication to the contrary the word " issue " as used in subdivision d of section 104.00 of the Local Finance Law must be given the meaning which it has acquired by court decisions and by legislative definition.

It is a matter of common knowledge that there may be and frequently is a considerable lag in time between the date when the electors of a district vote upon a proposition to raise money for building a new schoolhouse and the date when a bond issue may be ready for sale. After approval by the voters final plans and specifications must be made, and in turn these have to be approved by the Commissioner of Education before any district funds can be spent in connection therewith (Education Law, §§ 408, 1718). After such approval the board must advertise for bids from various contractors (General Municipal Law, §§ 103, 101). Moreover a district is entitled to some building aid from the State under section 1806 of the Education Law which cannot be computed until final reports from an architect are submitted to the State Department of Education. In this case there is proof that State aid may run as high as $500,000. It is unnecessary to labor the point that all of these matters take

time, and it is obvious from a common-sense viewpoint that bonds cannot be issued on the day of the district meeting. Since it is the actual issuance of bonds which fixes liability against the taxpayers the debt limitation requirement in subdivision d of section 104.00 in the Local Finance Law if strictly construed, and we find no reason to construe it otherwise, does not come into play until the issue of bonds is imminent.

It would seem from the foregoing that the only bar against the issuance of bonds by a school district would be its debt condition at the time the bonds are to be issued. This conclusion has support in section 109.00 of the Local Finance Law which requires that a debt statement in the proper form shall be prepared by a school district as of a date not more than thirty days before the sale of bonds, and shall be filed in the office of the State Comptroller and the office of the school district clerk not less than three nor more than fifteen days before such date of sale. There is no provision for the preparation or filing of such a debt statement at any other time. This requirement emphasizes the significance of the issuance date of the bonds.

We think therefore that respondent's proceeding was premature. Taking into consideration the delays mentioned it is quite evident that bonds could not be issued until some time in 1955. While it is true that the assessed valuation of real property in the district for the year 1954 was below an amount necessary to support a valid bond issue in the sum specified, without the assent of two thirds of the electors, it cannot be accurately foretold what the full equalized value may be at the time it is proposed to issue bonds in 1955. Ordinary assessments are notoriously unreliable as a measure of value, and hence the necessity for annual equalizations. There is proof that in one of the towns embraced within the district the equalized rate will be 32% for 1955 as against a former rate of 75%. Should that rate, or a similar rate, apply to other towns the full value of real property in the district would be well beyond any debt limitation of 10%. Full valuation is obtained by dividing the assessed valuation by the equalized rate. (Local Finance Law, § 2, subd. 21.) In any event it is difficult to see how any taxpayer can be deprived of any statutory or constitutional rights by the procedure followed. If at the time it is proposed to issue the bonds the debt limitation is still a bar the project must be abandoned, or else a two-thirds vote of the electors must be obtained, and the consent of the Board of Regents.

The interpretation of the statutes involved by the agency to whom the administration of educational matters has been

entrusted has been consistently contrary to the decision appealed from (*Matter of Robertson* [*Board of Educ., Bethlehem*], 73 N. Y. S. Dept. Rep. 13; *Matter of Haber* [*Schodack Central School Dist.*], 74 N. Y. S. Dept. Rep. 81, and *Matter of Van Bergen* [*Central School Dist., Durham*], 72 N. Y. S. Dept. Rep. 56). Such administrative decisions are entitled to weight. The identical issue was also decided recently, and contra to the decision appealed from, in *Matter of Rigaud* v. *Board of Educ., Ramapo* (207 Misc. 742).

In his amended petition respondent raised an alleged constitutional issue that the full faith and credit of the district had not been pledged by the electors of the district. The constitutional requirement (N. Y. Const., art. VIII, § 2) needs no implementation by the Legislature or action by the voters. Full faith and credit would necessarily be implied by a vote to raise money and to issue bonds therefor. Nevertheless the Legislature has set forth the form of bonds, and the manner in which the pledge of faith and credit of a school district must be executed (Local Finance Law, § 179.00).

We limit our decision to the facts of this case, which indicate in our judgment that it was reasonable for the appellant board of education to believe when it passed the bond resolution that the equalized assessed valuation of real property in the district would be sufficient to sustain the bond issue when the time for issuance came. The time lag was and is not unreasonable under the circumstances. We do not commit ourselves however to the theory that a board of education may, in the ordinary course of events, pocket or pigeonhole a majority vote on a proposed bond issue that clearly exceeds the district debt limit and hold the same for years on a mere speculation that sometime in the uncertain future the equalized assessed valuation of the district will be sufficient to support the issue. A rule of reason that demands good faith must be applied, and it would be unwise, if not impossible, to tailor a rule otherwise that would fit every conceivable set of circumstances. Suffice it to say that in this case bad faith on the part of the appellant board has not been shown, and every practical consideration, as well as a strict construction of the statutes involved, demands that the board's hands should not be fettered at this stage of the project.

The judgment should be reversed and the petitions dismissed as a matter of law, without costs.

BERGAN, HALPERN, IMRIE and ZELLER, JJ., concur.

Judgment reversed and petitions dismissed as a matter of law, without costs. Settle order on notice.