Herbert D. Hamm, J.
This is a proceeding pursuant to article 78 of the Civil Practice Act to set aside the commissioner’s determination dismissing an appeal and sustaining the result of a special election vote approving a proposal to issue bonds for the purpose of school construe I ion.
“In an appropriate case, in a proceeding in the nature of mandamus, the court may direct a hearing to be held (Civ. Prac. Act, § 1295; Matter of Arcuri v. Macduff, 286 App. Div. 17, and the cases there cited). However, in order to be entitled to a hearing, the petitioner must demonstrate that there is a triable issue of fact, the resolution of which in his favor would leave no rational basis for the administrative decision.” (Matter of O’Brien v. Commissioner of Educ. of State of N. Y., 3 A D 2d 321, 325, appeal dismissed 4 N Y 2d 140.)
The petitioner alleges that the commissioner’s action was arbitrary and capricious in 10 respects designated “a ”, “ b ”, “ c ”, “ d ”, “ e ”, “ f ”, “ g “ h “ i ” and “ 3 ”. They will be considered seriatim.
“a. In making and rendering said decision without investigation, holding a hearing and taking any testimony on the allegations set forth in the petition.
“ b. In failing to permit petitioner and other witnesses to testify concerning the facts set forth in the petition.”
There is no statutory provision or constitutional requirement that the commissioner hold a hearing at which evidence is to be taken (Matter of Kuhn v. Commissioner of Educ. of State of N. Y., 1 A D 2d 533, appeal dismissed 3 N Y 2d 749, motion for leave to appeal denied 2 N Y 2d 710; Matter of O’Brien v. Commissioner of Educ. of State of N. Y., 4 N Y 2d 140, supra).
“ c. In failing to permit petitioner to submit his testimony and that of other witnesses in affidavit form.”
Buie 2 of the commissioner’s Buies of Practice provides: “A copy of the appeal, and all the statements, maps and papers intended to be presented in support of it, with the affidavit in verification of the same, must be served” and the general *492 instructions provide: “ The appellant must establish his appeal by a preponderance of proof, and should make out his own case, so that if no answer is put in, the Commissioner of Education will have, in the appeal itself, all the facts to inform bim what order ought to be made.” The petitioner herein, the appellant before the commissioner, had ample opportunity to submit with his appeal the affidavits of any or all witnesses to him indicated.
“d. In failing to personally examine the reports submitted by the election inspectors. ’ ’
The commissioner devoted a paragraph of his decision to a discussion of the report submitted by the election inspectors. It is apodictic that an examination was a condition prerequisite to such discussion.
“ e. In failing to give proper consideration to the illegal opening of the voting machine in School Election District No. 2.”
No reply has been served to the respondents’ answers which contain new matter. Hence the new matter pleaded affirmatively is required to be deemed admitted (Civ. Prac. Act, § 1292; Matter of Bering v. Patterson, 2 A D 2d 820; Matter of Restivo v. Degnan, 191 Misc. 642, 646; Moreland v. Areson, 22 N. Y. S. 2d 309, 312). The new matter consists in part of 12 affidavits which are made a part of the answer. These 12 affidavits are by the commissioner of elections of Nassau County, the voting machine custodian of Nassau County, the assistant voting machine custodian of Nassau County, a lieutenant of the auxiliary police department, a member of the auxiliary police department, the chairman of the inspectors of election, the president of the board of education, the vice-president of the board of education, the three remaining members of the board of education and the attorney for the board of education. From these affidavits the undisputed facts appear. The school district was divided into six election districts. The voting machines used were capable of recording the votes of 999 people, the next vote would have reduced all the counters to zero. In only one district did the vote approach 999. In this district, when it was found that the machine was approaching its limit of 999, the attorney for the board of education communicated with the commissioner of elections. The commissioner of elections arranged for the assistant custodian to open the machine and return the counters to zero. The assistant custodian did so in the presence of two members of the auxiliary police department, the chairman of the inspectors of election and all the members of the school board. A record of the vote was made, the counters were *493 returned to zero and the machine was locked. Forty-eight persons who had been waiting to vote thereafter used the machine to cast their votes. After the voting was completed the machine was opened and the count was tabulated. It is not contended that the record of the votes cast was in any manner incorrect or that it did not accurately reflect the wishes of the voters. There is no evidence of fraud nor any proof that the opening and resetting of the machine affected the right of any qualified voter to vote and the petition does not so allege. The members of the board of education and the members of the auxiliary police department and the chairman of the inspectors of election were all instructed not to disclose the vote which appeared when the machine was opened for resetting when it reached its limit of 999. There is no allegation that the vote was so disclosed.
“ f. In failing to give proper consideration to or to make inquiry into the fact that the voting on all of the other machines was known prior to the illegal opening of the voting machine in School Election District No. 2.”
It frequently happens in a general election that voting in a district where the voting is concluded promptly at 9 o’clock is known in another district prior to the close of the polls in that district because numerous people in the latter district at 9 o’clock have been waiting to cast their ballots. There is no proof that any person was improperly influenced in the subsequent casting of his ballot because of his being aware of the number of votes cast for or against the proposition at other polling places and indeed there is no allegation to that effect.
“ g. In failing to give proper consideration to the fact that the voting machine in School Election District No. 2, was illegally opened after 9 P. M., at which time the polls should have been closed and no further voting should have been allowed except by those who were in the voting place prior to 9 P. M.”
It is a matter of record that 48 votes were cast after the resetting of the machine. It is true that “no further voting should have been allowed except by those who were in the voting place prior to 9:00 P. M.” but there is no allegation or proof that any voter who voted after 9 o ’clock was not present for the purpose of voting prior to that time. The report of the inspectors of election signed by the chairman and all members of the hoard and uncontradicted by any affidavit states that only such qualified electors as were within the polling place at 9 o’clock were permitted to vote thereafter.
*494 “ h. In failing to give proper consideration to the inadequacy of the facilities furnished in the various polling places including the number of voting machines available or to provide for the proper conduct of the election.”
As stated there were six election districts and six voting machines. That the board of education, relying on previous experiences in prior elections, did not foresee that in one of the districts more than 999 persons would vote is not a ground for invalidating the election. There is no proof that any person was deprived of an opportunity to vote.
“ i. In failing to give proper consideration to the fact that after the voting machine in School Election District No. 2 was opened and set back to zero, that there was electioneering and soliciting among the forty-eight voters who were then allowed to vote.”
There is nothing in the Education Law specifically prohibiting electioneering in school district elections. Subdivision 1 of section 2609 of the Education Law provides that elections “ shall be conducted, so far as may be,.in accordance with the provisions of the election law, relative to general elections ”. The commissioner has held repeatedly that electioneering will not invalidate an election so long as it does not interfere with the free exercise of the franchise (Matter of Locklin, 70 N. Y. St. Dept. Rep. 97; Matter of Board of Educ. of Union Free School Dist. No. 5 of Town of North Hempstead, etc., 55 N. Y. St. Dept. Rep. 575). Such administrative decisions are entitled to weight (Matter of Hill v. Board of Educ. of Cent. School Dist. No. 2 of Town of Glenville, etc., 286 App. Div. 332, 338, affd. 309 N. Y. 945). Moreover, there is no allegation or proof impugning either the votes cast or the count at the conclusion of the balloting and no claim or evidence of duress. As a matter of fact the petitioner was heard within the polling place while he spoke from a sound truck outside.
“ j. In failing to make an examination of the facts and circumstances on the appeal before him.”
The commissioner’s decision shows conclusively that he made a full examination of all matters before him on the appeal.
On the present state of the pleadings there is no triable issue of fact the resolution of which in the petitioner’s favor would leave no rational basis for the commissioner’s decision. The petition is dismissed on the merits.
Submit order to Troy on three days’ notice. All papers in this proceeding will be forwarded wdth the signed order.