[918 NE2d 917, 890 NYS2d 405]

In the Matter of SAVE THE PINE BUSH, INC., et al., Respondents, v COMMON COUNCIL OF THE CITY OF ALBANY, Appellant, et al., Respondent.

Argued September 15, 2009; decided October 27, 2009

298

**POINTS OF COUNSEL**

*John J. Reilly, Corporation Counsel,* Albany (*Jeffery V. Jami-son* of counsel), for appellant. I. Petitioners lack standing. (*Society of Plastics Indus. v County of Suffolk,* 77 NY2d 761;

*Schieffelin v Komfort,* 212 NY 520; *Consumers Union of U.S., Inc. v State of New York,* 5 NY3d 327; *Matter of Dairylea Coop. v Walkley,* 38 NY2d 6; *Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency,* 76 NY2d 428; *Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead,* 69 NY2d 406; *Matter of Wyman v Braman,* 298 AD2d 787; *Matter of Schulz v Warren County Bd. of Supervisors,* 206 AD2d 672; *Matter of McGrath v Town Bd. of Town of N. Greenbush,* 254 AD2d 614; *Matter of O'Donnell v Town of Schoharie,* 291 AD2d 739.) II. The Common Council of the City of Albany took a hard look prior to making a State Environmental Quality Review Act determination. (*Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400; *Akpan v Koch,* 75 NY2d 561; *Residents of Bergen Believe in Envt. & Democracy v County of Monroe,* 159 AD2d 81; *Mobil Oil Corp. v City of Syracuse Indus. Dev. Agency,* 224 AD2d 15, 89 NY2d 811; *Matter of Town of Dryden v Tompkins County Bd. of Representatives,* 78 NY2d 331; *Matter of Town of Henrietta v Department of Envtl. Conservation of State of N.Y.,* 76 AD2d 215; *Matter of Industrial Liaison Comm. of Niagara Falls Area Chamber of Commerce v Williams,* 131 AD2d 205, 72 NY2d 137; *Webster Assoc. v Town of Webster,* 59 NY2d 220; *Matter of Gernatt Asphalt Prods. v Town of Sardinia,* 87 NY2d 668; *Matter of Byer v Town of Poestenkill,* 232 AD2d 851.)

*Stephen F. Downs,* Selkirk, for respondents. I. Petitioners had standing to maintain this lawsuit. (*Society of Plastics Indus. v County of Suffolk,* 77 NY2d 761; *Matter of King v Saratoga County Bd. of Supervisors,* 89 NY2d 341; *Matter of Tri-County Taxpayers Assn. v Town Bd. of Town of Queensbury,* 55 NY2d 41; *Matter of Dairylea Coop. v Walkley,* 38 NY2d 6; *United States v Students Challenging Regulatory Agency Procedures [SCRAP],* 412 US 669; *Williamsburg Around the Bridge Block Assn. v Giuliani,* 223 AD2d 64; *Motor Veh. Mfrs. Assn. of U.S. v Jorling,* 152 Misc 2d 405; *Matter of Buerger v Town of Grafton,* 235 AD2d 984; *Matter of Oates v Village of Watkins Glen,* 290 AD2d 758; *Matter of Long Is. Pine Barrens Socy. v Planning Bd. of Town of Brookhaven,* 213 AD2d 484.) II. The jurisdiction of this Court is limited to questions of law and the merits of this appeal raise only issues of fact. (*Stiles v Batavia Atomic Horseshoes,* 81 NY2d 950; *Glenbriar Co. v Lipsman,* 5 NY3d 388.) III. The Common Council of the City of Albany failed to take a hard look at the effect of the project on rare species identified during scoping by interested agencies in the coordinated review. (*Matter of New York City Coalition to End Lead Poisoning v Vallone,* 100 NY2d 337.)

*Andrew M. Cuomo, Attorney General,* Albany (*Barbara D. Underwood, Andrea Oser* and *Andrew B. Ayers* of counsel), for New York State Department of Environmental Conservation, amicus curiae. I. Actual use and enjoyment of resources affected by a challenged project is a sufficient basis for standing under the State Environmental Quality Review Act. (*Matter of Gernatt Asphalt Prods. v Town of Sardinia,* 87 NY2d 668; *Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead,* 69 NY2d 406; *Society of Plastics Indus. v County of Suffolk,* 77 NY2d 761; *Matter of East Thirteenth St. Community Assn. v New York State Urban Dev. Corp.,* 84 NY2d 287; *Matter of Har Enters. v Town of Brookhaven,* 74 NY2d 524; *Matter of Committee to Preserve Brighton Beach & Manhattan Beach v Planning Commn. of City of N.Y.,* 259 AD2d 26.) II. An unduly narrow theory of the State Environmental Quality Review Act standing would undermine the purposes of the statute. (*Society of Plastics Indus. v County of Suffolk,* 77 NY2d 761; *Massachusetts v EPA,* 549 US 497; *Matter of Wyman v Braman,* 298 AD2d 787, 99 NY2d 578; *Matter of Heritage Coalition v City of Ithaca Planning & Dev. Bd.,* 228 AD2d 862, 88 NY2d 809; *Matter of Save Our Main St. Bldgs. v Greene County Legislature,* 293 AD2d 907; *Matter of Schulz v Warren County Bd. of Supervisors,* 206 AD2d 672, 85 NY2d 805; *Matter of Buerger v Town of Grafton,* 235 AD2d 984, 89 NY2d 816; *Baker v Carr,* 369 US 186; *Matter of Brighton Residents Against Violence to Children v MW Props.,* 304 AD2d 53, 100 NY2d 514.)

*The Law Office of Marc S. Gerstman,* Albany (*Cheryl A. Roberts* and *Marc S. Gerstman* of counsel), for Sierra Club Atlantic Chapter and others, amici curiae. Save the Pine Bush, Inc., a bona fide environmental organization, has standing to challenge the City of Albany's compliance with the State Environmental Quality Review Act (SEQRA) based on the injury-in-fact to the use and enjoyment of the Pine Bush Preserve, a natural resource within SEQRA's zone of interest. (*Matter of Dental Socy. of State of N.Y. v Carey,* 61 NY2d 330; *Society of Plastics Indus. v County of Suffolk,* 77 NY2d 761; *Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency,* 76 NY2d 428; *Matter of Save the Pine Bush, Inc. v Planning Bd. of Town of Clifton Park,* 50 AD3d 1296; *Matter of Long Is. Pine Barrens Socy. v Planning Bd. of Town of Brookhaven,* 213 AD2d 484; *Matter of Wyman v Braman,* 298 AD2d 787, 99 NY2d 578; *Matter of Otsego 2000 v Planning Bd. of Town of Otsego,* 171 AD2d 258, 79 NY2d 753; *Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead,* 69 NY2d 406;

*Matter of Douglaston Civic Assn. v Galvin,* 36 NY2d 1; *Matter of Har Enters. v Town of Brookhaven,* 74 NY2d 524.)

**OPINION OF THE COURT**

SMITH, J.

We hold that a person who can prove that he or she uses and enjoys a natural resource more than most other members of the public has standing under the State Environmental Quality Review Act (SEQRA) to challenge government actions that threaten that resource. Applying that rule to this case, we hold that the individual petitioners who are members of petitioner Save the Pine Bush, Inc., and the organization itself, have standing to challenge an action alleged to threaten endangered species in the Pine Bush area.

We also conclude, however, that petitioners' challenge fails on the merits. The City of Albany did not violate SEQRA when, in examining the environmental impact of a zoning change for property located near the Pine Bush, it focused its attention on the areas of major environmental concern. It was not required to scrutinize every possible environmental issue, and the failure of the City's environmental impact statement (EIS) to discuss the possible impact of rezoning on certain rare species was therefore not a fatal flaw.

I

In September 2003, Tharaldson Development Company, the owner of a 3.6 acre parcel of land located on Washington Avenue Extension in Albany, applied for a rezoning of the parcel to allow for construction of a hotel. Though zoned for residential use, the property was at that time a parking lot. Adjacent properties were occupied by shopping malls and commercial office buildings.

Tharaldson's property is not part of the area protected by the Albany Pine Bush Preserve Commission, but it is near to protected areas, including Butterfly Hill, a habitat of the endangered Karner Blue butterfly. Butterfly Hill is said by petitioners to contain "[t]he largest population of Karner Blue butterflies south of the [New York State] Thruway," and, thanks in part to petitioners' efforts, significant Pine Bush acreage has long been set aside for the preservation of Karner Blues (*see Matter of Save the Pine Bush v Common Council of City of Albany,* 188 AD2d 969 [3d Dept 1992]). The effect of the hotel construction, if any, on Karner Blues was recognized from the

outset as the principal environmental issue raised by the proposal. Tharaldson also acknowledged that there would be some impact on existing drainage patterns, and on traffic.

The Common Council of the City of Albany (the City) determined that the proposed rezoning required the preparation of an EIS. In August 2004, the City circulated to interested parties a "Draft Scoping Checklist" for the EIS, listing a number of environmental aspects of the project that it planned to examine, including water resources; transportation and traffic; terrestrial and aquatic ecology; and "Pine Bush." Under each of the latter two headings, the checklist said that the impact on the Karner Blue butterfly's habitat would be analyzed. No other plant or animal species was mentioned in the checklist.

A letter sent by the Department of Environmental Conservation (DEC) in response to the draft checklist contains the first mention in this record—and the last, before the bringing of this lawsuit—of species that are now central to this case. The DEC said "it is important, and indeed essential, that this project include a detailed evaluation of potential site use by Karner blue butterflies," but it added "that the Karner blue butterfly is one species in a rare habitat that is known to support numerous rare or unusual species." It named four other of these species—the Frosted Elfin butterfly, the Hognosed Snake, the Worm Snake, and the Eastern Spadefoot Toad—and asked that the City's biological investigation encompass them.

Having received comments on the checklist, the City and Tharaldson completed the preparation of a draft environmental impact statement (DEIS). This document, as accepted by the City in March 2005, contained more than 500 pages, including 68 of text and 12 appendices. The executive summary identified two "Significant Items": the proximity of the project to the Karner Blue butterfly habitat and an increase in traffic. Several other subjects, including water resources, air quality, and the potential for an increase in exposure to tick-borne and mosquito-borne diseases, were discussed in the text. Among the appendices was a report by a biologist, Dr. Richard Futyma, who had repeatedly visited the site of the proposed hotel, had been able to find no Karner Blues, and had concluded that the site "does not constitute a significant resource for the Karner blue butterfly." Nothing was said in the DEIS of the other species that DEC had identified in its earlier letter.

The DEIS, like the checklist, was made available for comment. Among the commenters were the United States Fish and Wildlife Service (FWS), the Albany Pine Bush Preserve Commission (APBC) and DEC. All three discussed Karner Blue butterflies in some detail. None of these agencies' comments, and no other comments on the DEIS that the parties have called to our attention, made any specific reference to the Hognosed Snake, the Worm Snake or the Eastern Spadefoot Toad. The FWS and DEC comments mentioned the Frosted Elfin briefly, and APBC's comments referred with equal brevity to a species that had not, apparently, come up before: the Adder's Mouth Orchid. The FWS and APBC comments also referred generally to possible impacts on non-butterfly species.

In July 2005, Dr. Futyma supplemented his report to address comments on the DEIS. As to the Frosted Elfin butterfly he said that it is "likely to occur in the same places as Karner blue butterflies"; that certain plants on which it is known to feed "are absent from or rare in the Albany Pine Bush"; and that he observed no Frosted Elfins on the proposed hotel site. He also listed all the plants he observed growing on the site; the Adder's Mouth Orchid was not among them. Like the commenters on the DEIS, he said nothing about the Hognosed Snake, the Worm Snake or the Eastern Spadefoot Toad.

The City accepted the final EIS in November 2005 and approved the zoning change in December 2005. In March 2006, Save the Pine Bush, Inc. and nine of its members began this proceeding challenging the City's action under SEQRA. The individual petitioners alleged that they "live near the site of the hotel project" and that they "use the Pine Bush for recreation and to study and enjoy the unique habitat found there." The amended petition contained nine causes of action, most of them based, at least in part, on alleged failures to consider adequately the need to protect the Karner Blue butterfly. All these causes of action have now been dismissed, and petitioners do not challenge their dismissal. The only surviving cause of action is the third, in which petitioners asserted that the EIS was deficient for failing to evaluate possible threats to the "Frosted elfin butterfly or any other listed species." The third cause of action named four other species: the Adder's Mouth Orchid, the Hognosed Snake, the Worm Snake and the Eastern Spadefoot Toad.

Supreme Court denied a motion to dismiss the proceeding for lack of standing, and in a later opinion upheld the third cause of action, vacated the City's SEQRA determination and annulled

the rezoning. Supreme Court acknowledged that the EIS gave "considerable attention . . . to the impact the project may have on the off-site Karner blue butterfly population, and to a lesser extent the Frosted elfin butterfly," but found it flawed because it did not contain "a hard look" at the potential impact of the action on other rare plants and animals.

The Appellate Division affirmed, with two Justices dissenting (*Matter of Save the Pine Bush, Inc. v Common Council of City of Albany*, 56 AD3d 32 [3d Dept 2008]). While concluding "that none of the individual petitioners resides close enough to the proposed project so as to presumptively demonstrate that they have sustained demonstrable injury different from the public at large" (*id.* at 36) the majority held that evidence "that they regularly use the Preserve" and that "at least one of them resides in sufficient proximity to the Preserve to facilitate that use" was enough to establish standing (*id.* at 37). On the merits, the Appellate Division majority agreed with Supreme Court that the EIS did not address adequately the project's potential impact on species other than the Karner Blue butterfly. The dissenters would have dismissed the petition for lack of standing, and did not reach the merits. The City appeals to this Court as of right, pursuant to CPLR 5601 (a).

## II

■ The City, relying on *Society of Plastics Indus. v County of Suffolk* (77 NY2d 761 [1991]), argues that petitioners lack standing because none of the individual petitioners, and no member of petitioner Save the Pine Bush, Inc., is a near neighbor of the site of the proposed hotel development. The closest lives approximately half a mile away. Petitioners argue that they have standing under *Society of Plastics*, but ask us in the alternative to "reform" or abandon the holding of that case. We see no reason to depart from *Society of Plastics*, but we agree with petitioners that they have standing under the principles that case laid down.

In *Society of Plastics*, we held that "[i]n land use matters . . . the plaintiff, for standing purposes, must show that it would suffer direct harm, injury that is in some way different from that of the public at large" (77 NY2d at 774). More specifically, we said that in cases involving environmental harm, the standing of an organization could be "established by proof that agency action will directly harm association members in their use and enjoyment of the affected natural resources" (*id.* at

775). We observed that in the *Society of Plastics* case itself, involving allegations of environmental harm from the manufacture of paper, "it would be residents close to those facilities"— i.e., landfills and paper manufacturing plants—"that would directly suffer the alleged harms" (*id.* at 779). However, *Society of Plastics* does not hold, or suggest, that residence close to a challenged project is an indispensable element of standing in every environmental case.

Here, petitioners allege that they "use the Pine Bush for recreation and to study and enjoy the unique habitat found there." It is clear in context that they allege repeated, not rare or isolated use. This meets the *Society of Plastics* test by showing that the threatened harm of which petitioners complain will affect them differently from "the public at large." Indeed, people who visit the Pine Bush, though they come from some distance away, seem much more likely to suffer adverse impact from a threat to wildlife in the Pine Bush than the actual neighbors of the proposed hotel development—the owners and occupants of the nearby office buildings and shopping malls. The neighbors may care little or nothing about whether butterflies, orchids, snakes and toads will continue to exist on or near the site. The City asks us to adopt a rule that environmental harm can be alleged only by those who own or inhabit property adjacent to, or across the street from, a project site; that rule would be arbitrary, and would mean in many cases that there would be no plaintiff with standing to sue, while there might be many who suffered real injury.

In recognizing that injury of the kind petitioners here allege can confer standing, we adopt a rule similar to one long established in the federal courts. In *Sierra Club v Morton* (405 US 727, 734 [1972]), the United States Supreme Court held that a generalized "interest" in the environment could not confer standing to challenge environmental injury, but that injury to a particular plaintiff's "[a]esthetic and environmental well-being" would be enough (*see also Lujan v Defenders of Wildlife*, 504 US 555, 562-563 [1992] ["the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing"]; *Friends of Earth, Inc. v Laidlaw Environmental Services [TOC], Inc.*, 528 US 167, 183 [2000]). Indeed, the *Sierra Club* Court noted that the plaintiff there "failed to allege that it or its members would be affected in any of their activities or pastimes" by the development it challenged (*id.* at 735).

Petitioners here make the allegation that was missing in *Sierra Club*.

In recognizing that petitioners' alleged injuries are a sufficient basis for standing, we do not suggest that standing in environmental cases is automatic, or can be met by perfunctory allegations of harm. Plaintiffs must not only allege, but if the issue is disputed must prove, that their injury is real and different from the injury most members of the public face. Standing requirements "are not mere pleading requirements but rather an indispensable part of the plaintiff's case" and therefore "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof" (*Lujan*, 504 US at 561). Here, the City does not challenge the reality of the injuries petitioners assert—understandably so, since it seems highly likely that many members of an organization called Save the Pine Bush, Inc. are people who frequently visit and enjoy the Pine Bush. But in other cases, including those brought by organizations devoted to less specific environmental interests—the plaintiff in *Sierra Club*, for example—plaintiffs may be put to their proof on the issue of injury, and if they cannot prove injury their cases will fail.

Thus, while we decline to erect standing barriers that will often be insuperable, we are also conscious of the danger of making these barriers too low. It remains true, as it was when *Society of Plastics* was decided, that SEQRA litigation "can generate interminable delay and interference with crucial governmental projects" (77 NY2d at 774). In *Society of Plastics*, we said that such delay could come from "challenges unrelated to environmental concerns" (*id.*); but even good faith environmental challenges, like the one brought by these petitioners, can be very burdensome. Striking the right balance in these cases will often be difficult, but we believe that our rule—requiring a demonstration that a plaintiff's use of a resource is more than that of the general public—will accomplish that task better than the alternatives.

### III

In evaluating the merits of the case, the courts below concluded that the City had not met its obligation under SEQRA (ECL 8-0101 *et seq.*) to identify "the relevant areas of environmental concern," to take a "hard look" at them and to make a "reasoned elaboration" of the basis for its determination (*Matter of Jackson v New York State Urban Dev. Corp.*, 67

NY2d 400, 417 [1986]). Specifically, they held that the City had failed in its duty by not investigating threats the proposed rezoning might pose to plant and animal species other than the Karner Blue butterfly—including the Frosted Elfin butterfly, the Hognosed Snake, the Worm Snake, the Eastern Spadefoot Toad and the Adder's Mouth Orchid. The courts below implicitly assumed that the "relevant areas of environmental concern" that the City was required to examine included all environmental problems that were brought to the City's attention. This assumption is wrong. An agency complying with SEQRA need not investigate every conceivable environmental problem; it may, within reasonable limits, use its discretion in selecting which ones are relevant (see Jackson, 67 NY2d at 417).

Here, in addition to investigating such subjects as traffic and storm water drainage, the City concerned itself with the ecology of the Pine Bush, but focused on the species that was generally considered of most importance, the Karner Blue butterfly. It is apparent from this record, and from previous litigation (see Matter of Save the Pine Bush v Common Council of City of Albany, 188 AD2d 969, 970-971 [3d Dept 1992]), that the preservation of the Karner Blue has long been a major objective of those interested in the Pine Bush. Supreme Court held, and petitioners do not now dispute, that the City's scrutiny of possible threats to the Karner Blue complied with SEQRA. Also, we are satisfied that the EIS—specifically, Futyma's supplemental report responding to comments on the DEIS—contains an adequate evaluation of any threat to the Frosted Elfin butterfly and the Adder's Mouth Orchid.

It is true that the record shows no investigation relating to the Hognosed Snake, the Worm Snake or the Eastern Spadefoot Toad. We do not suggest that these species are unimportant, but we think that the City did not act arbitrarily in omitting them from its investigations. While DEC did identify them in a letter commenting on the scoping checklist, it offered no particular reason to believe that the project would threaten them, and no other commenter in the SEQRA process mentioned them at all. When they were omitted from the DEIS neither DEC nor anyone else called attention to the omission. It would, it seems, have been a formidable task to determine whether these species even existed on the site; petitioners' brief informs us that two of them, the Worm Snake and the Eastern Spadefoot Toad, "are very difficult to locate and identify" because "they spend much of their time underground and generally emerge only after heavy rain storms."

While it is essential that public agencies comply with their duties under SEQRA, some common sense in determining the extent of those duties is essential too. We quoted above our warning in *Society of Plastics* that SEQRA proceedings "can generate interminable delay." This case illustrates the point. It does not involve a project of mammoth size or obvious destructive potential, but simply the building of a hotel on a 3½ acre site, on a thoroughfare already in commercial use. The developer first sought rezoning more than six years ago. In those years, the City has identified several relevant environmental concerns, taken the required hard look at them, and explained in a detailed report the result of its investigations. That it chose not to investigate some matters of doubtful relevance is an insufficient reason for prolonging the process further, and for adding to the expense. A "rule of reason" (*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d at 417) is applicable not only to an agency's judgments about the environmental concerns it investigates, but to its decisions about which matters require investigation.

IV

Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.

PIGOTT, J. (concurring). The majority's holding, in my view, reinterprets much too broadly the special harm requirement that has been the cornerstone of our standing jurisprudence in land use cases. Therefore, while I agree with the majority on the merits, I am compelled to disagree on the issue of standing.

For the last 18 years, SEQRA cases involving standing issues have been decided under rules set down by this Court in *Society of Plastics Indus. v County of Suffolk* (77 NY2d 761 [1991]). In that case, we recognized that the Legislature did not intend every person or citizen to have the right to sue to compel SEQRA compliance (*id.* at 770). Rather, in order to have standing, a party must demonstrate an "injury in fact"—an actual legal stake in the matter being adjudicated—which falls within the "zone of interests, or concerns, sought to be promoted or protected by the statutory provision under which the agency has acted" (*id.* at 772-773 [internal quotation marks and citations omitted]). With particular reference to land use cases, we held that the injury must constitute a "special harm" such that the party would "suffer direct harm, injury that is in some way

different from that of the public at large" (*id.* at 774). In other words, the plaintiff must show a "direct interest in the administrative action being challenged, different in kind or degree from that of the public at large" (*id.* at 775). This doctrine "grew out of a recognition that, while directly impacting particular sites, governmental action affecting land use in another sense may aggrieve a much broader community" (*id.* at 774).

An exception to the "special harm" requirement has been recognized where a presumption of standing will exist to a landowner or resident who is either adjacent, or in close proximity, to the challenged project. These challengers are "presumptively harmed" in a manner different than the public at large. Under this exception, courts have held landowners or those who reside within 500 feet of a challenged project are close enough to remove the burden of pleading a special harm (*see Matter of Michalak v Zoning Bd. of Appeals of Town of Pomfret*, 286 AD2d 906, 906-907 [4th Dept 2001] [petitioners who owned property within 200 feet of a cellular tower had standing to challenge the replacement of an antenna on the tower]; *but see Matter of Oates v Village of Watkins Glen*, 290 AD2d 758 [3d Dept 2002] [petitioner residing 530 feet away had no standing]; *Matter of Buerger v Town of Grafton*, 235 AD2d 984 [3d Dept 1997] [petitioner 600 feet away lacked standing]). No such presumption can be found here as it is undisputed that no one from the petitioning corporation lives within a half mile of the proposed site.

Contrary to the majority's conclusion, the City does not ask the Court to adopt a rule that environmental harm can be alleged only by those who live in close proximity to the project site (majority op at 305).[1] It simply argues that petitioners are far beyond the acceptable limits to confer standing based on the close proximity exception.

Further, I agree with the City's contention that petitioners' alleged harm constitutes a concern to the community as a whole as opposed to one specific to petitioners and, therefore, does not fall within the "special harm" requirement under *Society of Plastics*. Petitioners claim they are injured by way of loss of

---

1. Indeed, it is the petitioners that ask for a departure from the rule set out in *Society of Plastics*. Rather than arguing to this Court how they met the standing threshold, petitioners argue that the special harm requirement does not advance any policy goals of SEQRA, is too broad, and should not be applied in SEQRA cases.

recreation and use and enjoyment of the Pine Bush's habitat. The Pine Bush and all of its natural resources, however, can be used and enjoyed by the public at large. The concerns of the petitioners amount to the same general concerns of the community as a whole and are not specific to the petitioners. In short, because petitioners fail to specify any direct injury that is any different from that of the general public, they lack standing under our precedent.

Indeed, our courts have consistently and correctly applied the standard set forth in *Society of Plastics*, recognizing that standing based on an organization's mere dedication to environmental preservation or a member's use and recreation is not enough for standing. For example, in *Matter of Long Is. Pine Barrens Socy. v Planning Bd. of Town of Brookhaven* (213 AD2d 484 [2d Dept 1995]), the petitioners, an association representing the interests of the Long Island Pine Barrens, challenged the approval of a 121-unit residential real estate project on Long Island. The petitioners argued that the project would have a "deleterious impact upon the aquifer lying beneath the South Setauket Pine Barrens" (*id.* at 485). This, the court noted, was not an environmental injury that was in any way "different in kind and degree from [that of] the community generally" (*id.*).

In *Matter of Save the Pine Bush, Inc. v Planning Bd. of Town of Clifton Park* (50 AD3d 1296 [3d Dept 2008]), the petitioner was found to have lacked standing to challenge a determination permitting development of a parcel that had been identified as a potential home of the same Karner Blue butterfly at issue here. In that case, the court rejected petitioner's claim of standing based on the fact that its members enjoy observing the Karner Blue butterfly as part of their recreational activities. The court found that this interest is "no different than the interest enjoyed by the public at large" (*id.* at 1297). Such an activity— and the impact on it as the result of the proposed development on this property—did not, the court found, establish the "specific environmental injury" that confers standing under SEQRA (*id.*). Further, the court noted that none of the petitioner's members established that they lived in close proximity to the property so as to distinguish any of them as having a "legally protectable interest so as to confer standing" (*id.* at 1298).

The federal cases cited by the majority, *Sierra Club v Morton* (405 US 727, 734 [1972]) and *Lujan v Defenders of Wildlife* (504 US 555, 562-563 [1992]), are inapposite. Those cases did not

involve New York's "special harm" requirement, and invoke a different view of the relation between personal and public injury from what has consistently been stated in land use cases in New York[2] (*see Sierra Club*, 405 US at 734 ["Aesthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society, and the fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process"]; *Lujan v Defenders of Wildlife*, 504 US at 560-561).

Moreover, to the extent that those federal cases can be viewed as supporting standing in situations where petitioners allege an injury to use or recreation or "aesthetic interests," they do not apply in this case. Here, the project site is not within the Pine Bush Preserve, but rather is private property located in a heavy commercial corridor. Unlike the Pine Bush Preserve, the project site is not used by petitioners—or the general public—for any purpose and it possesses no recreational value. The harm asserted by petitioners is a general harm that the project site may have on a completely different, recreational site, the Pine Bush Preserve. The majority's holding, taken to its logical conclusion, results in Save the Pine Bush and its members having standing to sue whenever a project site, no matter where its location, may have a potential impact on animals and plants that happen to live in the Pine Bush.

It is important to remember that petitioners have not been prevented from voicing their concerns about the project during the SEQRA process. Indeed, petitioners did just that. Early on, the Pine Bush Preserve Commission sent correspondence to the Common Council Zoning Committee identifying several points to be addressed by the environmental impact statement, as well as several recommendations and potential impacts on the Pine Bush. The members of Save the Pine Bush also had an

---

2. Those courts applied the traditional federal test to ascertain whether the plaintiffs had standing under the "case or controversy" jurisdictional limitation contained in article III of the US Constitution. They analyzed whether the plaintiffs could demonstrate (1) an "injury in fact"; (2) that is "fairly traceable to the challenged action of the defendant"; and (3) that it is likely that any injury would be redressed by a favorable judicial decision (*Friends of Earth, Inc. v Laidlaw Environmental Services [TOC], Inc.*, 528 US 167, 180-181 [2000]; *see also Lujan v Defenders of Wildlife*, 504 US 555, 560-561 [1992]; *Sierra Club v Morton*, 405 US 727, 732-733 [1972]). Unlike here, no SEQRA statute was involved nor was any proof of a special harm required by the courts.

opportunity to attend the public hearings and make public comment. Remembering that the courts' role in reviewing the actions taken is a legal one—deciding whether the determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion (*see Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400 [1986])—the appropriate place for petitioner is in the proceedings before the lead agency and not, in all instances, before the court, where little is accomplished except delay.

Consequently, I would hold that because petitioners assert only generalized claims of harm, no different than the public at large, they lack standing to challenge the City's determination and therefore, I would dismiss this proceeding on that ground.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO and JONES concur with Judge SMITH; Judge PIGOTT concurs in result in a separate opinion in which Judge READ concurs.

Order reversed, etc.