[975 NYS2d 205]

In the Matter of THOMAS C. O'BRIEN, Appellant, v NEW YORK STATE COMMISSIONER OF EDUCATION et al., Respondents.

Third Department, November 7, 2013

## APPEARANCES OF COUNSEL

*Thomas C. O'Brien*, Corning, appellant pro se.

*Eric T. Schneiderman, Attorney General*, Albany (*Andrew B. Ayers* of counsel), for New York State Commissioner of Education, respondent.

*Harris Beach, PLLC*, Pittsford (*Joseph D. Picciotti* of counsel), for City School District of the City of Corning, respondent.

## OPINION OF THE COURT

SPAIN, J.

Respondent City School District of the City of Corning is a small city school district located in the counties of Steuben,

Schuyler and Chemung (*see* Education Law art 51). In 2010, the School District's Board of Education (hereinafter Board) approved a district-wide plan, scaled back from earlier unsuccessful proposals, to reorganize and upgrade the School District's facilities (hereinafter the facilities project) at an expected cost of $9.9 million,[1] including consolidating and renovating the existing two high schools and the two middle schools (creating one of each), repurposing the two closed middle school buildings and the administrative offices, and technology upgrades at all schools. The Board contemporaneously approved a resolution which, subject to voter approval, authorized the issuance of bonds to finance the facilities project (hereinafter the bond resolution) and voted to hold a special election to obtain voter approval thereof. The Board also conducted an environmental review of the project and passed a resolution classifying the facilities project as a type I action pursuant to the State Environmental Quality Review Act (hereinafter SEQRA; *see* 6 NYCRR 617.4) and declared that it would not result in any significant adverse environmental impact (hereinafter the negative declaration).

Petitioner thereafter filed a petition with respondent Commissioner of Education challenging the School District's approval of the bond resolution and negative declaration (*see* Education Law § 2037). The Commissioner denied petitioner's request for a stay of the special election, and the voters of the School District approved the facilities project bond resolution on December 16, 2010. The Commissioner subsequently dismissed the petition, finding no merit to petitioner's contention that the bond resolution violates the School District's statutory or constitutional debt limit. Petitioner then commenced this CPLR article 78 proceeding challenging that administrative determination and raised issues pertaining to the SEQRA determination. The School District and Commissioner served answers and moved to dismiss the petition, and the School District alternately sought summary judgment. Supreme Court dismissed the petition on the merits. Petitioner now appeals.

■ Petitioner's primary contention is that the facilities project and bond resolution violate the School District's constitutional and statutory debt limit, an argument that turns on how to calculate or classify indebtedness for debt limit purposes. That is, the issue is whether the authorization for bonds to be issued in the future to finance the facilities project are—for

---

1. All numbers have been rounded for ease of reference.

purposes of the debt limit calculation—included in the School District's indebtedness at the time they are authorized, as petitioner argues, or when the bonds are actually issued, as respondents contend. We conclude, as did Supreme Court and the Commissioner, that indebtness is not incurred for purposes of the School District's debt limit until the authorized bonds are actually sold, i.e., issued.

By statute, a school district may adopt a resolution authorizing the issuance of bonds, subject to voter approval (see Local Finance Law § 37.00 [b] [3]; see also Education Law § 416). Such a bond resolution must be approved by a majority of the voters in the school district (see Education Law § 416 [1]), but is subject to a constitutional and statutory debt limit that prohibits a school district from "contract[ing] indebtedness" that, when combined with "existing indebtedness," exceeds 5% of the district's average full valuation of taxable real property (NY Const, art VIII, § 4 [h]; Local Finance Law § 104.00 [b] [8]).[2] Pursuant thereto, the School District calculated and projected its total allowable debt limit ($92.3 million), and its "existing indebtedness" ($22.3 million), taking into account bonds that it has actually issued. The School District's financial plan further anticipated and factored in that it would pay off portions of its outstanding debt each year, and also projected that its debt limit was expected to increase (anticipating that the full value of the School District's taxable property would increase). The School District calculated that it could incur an additional $69.9 million in debt under its plan without exceeding its debt limit (i.e., $92.3 million debt limit, minus $22.3 million existing debt, leaves approximately $69.9 million of allowable debt). The School District's plan included a borrowing sequence in which it would issue the authorized bonds in stages over time during the length of the facilities project, while existing debt was being paid down, so that at no time would its total outstanding indebtedness exceed the 5% debt limit.

Petitioner contends that the facilities project and bond resolution violated and exceeded the School District's total debt limit (of $92.3 million), relying on the premise that the total $97.4 million value of authorized bonds must be included in the

2. While this debt limit can be exceeded if, among other requirements, at least 60% of a school district voters approve the bond resolution (see NY Const, art VIII, § 4 [h]; Local Finance Law § 104.00 [c]), and the bond resolution here received such voter approval, the School District did not pursue that course.

calculation of its indebtedness *as of the time the bonds were authorized by resolution*, and not when the bonds are actually issued and sold in the future. Like its constitutional predecessor, Local Finance Law § 104.00 (b) (8) provides, as relevant, that school districts shall not "contract indebtedness . . . including existing indebtedness" in an amount exceeding the 5% debt limit (NY Const, art VIII, § 4 [h]). The questions are whether the School District "contract[ed] indebtedness" when it passed a resolution authorizing issuance of the bonds to finance the facilities project, and whether "existing indebtedness" includes future potential obligations on bonds authorized but not yet issued.

In determining whether a bond resolution complies with or exceeds the debt limit, the determinative inquiry into the amount of indebtedness incurred focuses on "the time the bonds are to be actually issued" (*Matter of Hill v Board of Educ., Glenville*, 286 App Div 332, 335-338 [1955], *affd* 309 NY 945 [1955]). In the absence of a statutory definition, we look to the well-settled meaning given to a term in our case law (*see Matter of Moran Towing & Transp. Co. v New York State Tax Commn.*, 72 NY2d 166, 173 [1988]; *Matter of Yellow Book of N.Y., Inc. v Commissioner of Taxation & Fin.*, 75 AD3d 931, 932 [2010], *lv denied* 16 NY3d 704 [2011]). As *Matter of Hill* noted, and reading the provisions of Local Finance Law § 104.00 together as a whole (*see Matter of New York County Lawyers' Assn. v Bloomberg*, 19 NY3d 712, 721 [2012]), the only restriction is upon "issuance" of bonds, which constitutes "indebtedness." "The word 'issue' has a rather clear and accepted meaning in this state when used with reference to bonds and notes. It means the delivery of such obligations against payment of the purchase price" (*Matter of Hill v Board of Educ., Glenville*, 286 App Div at 336 [citations omitted]; *see* UCC art 8 [bonds "issued"]). Thus, for purposes of the debt limit, "contract indebtedness" and "existing indebtedness" include only bonds that have been actually issued—i.e., sold—at that time, and exclude the value of bonds that have merely been authorized for future issuance (*see New York State Elec. & Gas Corp. v City of Plattsburgh*, 281 NY 450, 456-457 [1939]; *Matter of Hill v Board of Educ., Glenville*, 286 App Div at 335-338; *see also Zimmermann v Timmermann*, 193 NY 486, 493 [1908]).

Indeed, only bonds actually issued obligate the School District so as to be calculated in the debt limit because, as Supreme Court recognized, the School District did not borrow any money

or incur any debt by the mere act of passing a bond resolution authorizing their sale, and that authorized bond amount need not be included in the debt limit computations. This is also consistent with prior administrative opinions (*see* 11 Ops St Comp No. 7752 at 634-635 [1955]; *Matter of Platt*, 11 Ed Dept Rep 113, 114 [Decision No. 8,371]). As our analysis reflects, there are many contingencies—the bonds may never be issued, the authorizing resolutions may be repealed, a school district's debt limit may increase (or decrease) over time, and a school district's preexisting debt may be paid down prior to issuance of previously authorized bonds—all supporting the logic of calculating indebtedness for purpose of the debt limit as of the time the bonds are *issued* and not when they are authorized. This manifests that the bonds are only then debts or obligations of the district to which the 5% cap applies. Our review of the Commissioner's determination is limited to "whether [it] [is] arbitrary, capricious or irrational" (*Matter of Finch, Pruyn & Co. v Mills*, 297 AD2d 406, 407 [2002]).[3] In view of the foregoing, we find that the Commissioner rationally determined that the facilities project and bond resolution do not violate the School District's constitutional or statutory debt limit (*see New York State Elec. & Gas Corp. v City of Plattsburgh*, 281 NY at 456-457; *Matter of Hill v Board of Educ., Glenville*, 286 App Div at 335-338).

■ Finally, petitioner lacks standing to challenge the School District's SEQRA determination and process (*see Matter of Save the Pine Bush, Inc. v Common Council of City of Albany*, 13 NY3d 297, 304-306 [2009]; *Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 774-779 [1991]). Standing, even to raise environmental challenges, is not automatic and must be alleged and, when disputed, proven (*see Matter of Save the Pine Bush, Inc. v Common Council of City of Albany*, 13 NY3d at 306); this petitioner failed to do. To the extent that petitioner relies on the proximity of his property to one of the buildings scheduled for repurposing—Corning Free Academy—to raise an inference of injury sufficient to confer standing, under our decisional law a distance of over 1,000 feet[4] "is not close enough to give rise to

3. Given that petitioner's pro se brief implicitly challenges the Commissioner's determination, we reject the Attorney General's contention that he has abandoned that challenge.

4. Petitioner did not allege any specific distance in his pleadings, instead merely alleging that he lives "two blocks" from the property; rather, this in-

the presumption that the neighbor is or will be adversely affected by the proposed project" (*Matter of Finger Lakes Zero Waste Coalition, Inc. v Martens*, 95 AD3d 1420, 1421-1422 [2012] [and cases cited therein], *lv denied* 19 NY3d 811 [2012]; *see Matter of Clean Water Advocates of N.Y., Inc. v New York State Dept. of Envtl. Conservation*, 103 AD3d 1006, 1007-1008 [2013], *lv denied* 21 NY3d 862 [2013]). Further, petitioner failed to allege or identify any actual injury or direct harm that he will suffer, environmental or otherwise, if the facilities project is undertaken that is distinct from the harm experienced by the general public (*see Society of Plastics Indus. v County of Suffolk*, 77 NY2d at 774-779; *see also Matter of Save the Pine Bush, Inc. v Common Council of City of Albany*, 13 NY3d at 304-306; *Matter of Finger Lakes Zero Water Coalition, Inc. v Martens*, 95 AD3d at 1422-1423). Even assuming that the site in issue could be deemed a "natural resource" (*Society of Plastics Indus. v County of Suffolk*, 77 NY2d at 776), petitioner's allegations that he visits and has used the property did not establish repeated rather than isolated use, and are insufficient to demonstrate that he will suffer direct environmental harm and damages that are distinguishable from those that might be experienced by the public at large. Accordingly, petitioner lacks standing to raise the SEQRA challenges here. Petitioner's remaining claims do not support or warrant disturbing the Commissioner's determination.

PETERS, P.J., STEIN and McCARTHY, JJ., concur.

Ordered that the judgment is affirmed, without costs.

---

formation was submitted by the School District on its motion seeking dismissal or summary judgment.