# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**617**

**CA 16-02043**

PRESENT: WHALEN, P.J., SMITH, CENTRA, PERADOTTO, AND SCUDDER, JJ.

---

IN THE MATTER OF MARGARET WOOSTER, CLAYTON S.
"JAY" BURNEY, JR., LYNDA K. STEPHENS AND JAMES E.
CARR, PETITIONERS-APPELLANTS-RESPONDENTS,

                    V                                    MEMORANDUM AND ORDER

QUEEN CITY LANDING, LLC,
RESPONDENT-RESPONDENT-APPELLANT,
CITY OF BUFFALO PLANNING BOARD AND CITY OF
BUFFALO COMMON COUNCIL, RESPONDENTS-RESPONDENTS.
(PROCEEDING NO. 1.)

-------------------------------------------------------

IN THE MATTER OF BUFFALO NIAGARA RIVERKEEPER, INC.,
PETITIONER-APPELLANT-RESPONDENT,

                    V

CITY OF BUFFALO, RESPONDENT-RESPONDENT,
AND QUEEN CITY LANDING, LLC,
RESPONDENT-RESPONDENT-APPELLANT.
(PROCEEDING NO. 2.)
(APPEAL NO. 1.)

---

ARTHUR J. GIACALONE, BUFFALO, AND LIPPES & LIPPES, FOR
PETITIONERS-APPELLANTS-RESPONDENTS.

HOPKINS SORGI & ROMANOWSKI PLLC, BUFFALO (MARC A. ROMANOWSKI OF
COUNSEL), AND DUKE HOLZMAN PHOTIADIS & GRESENS LLP, FOR
RESPONDENT-RESPONDENT-APPELLANT.

TIMOTHY A. BALL, CORPORATION COUNSEL, BUFFALO (JESSICA M. LAZARIN OF
COUNSEL), FOR RESPONDENTS-RESPONDENTS.

---

        Appeals and cross appeal from a judgment (denominated order and
judgment) of the Supreme Court, Erie County (Donna M. Siwek, J.),
entered October 11, 2016 in these proceedings pursuant to CPLR article
78.  The judgment denied the motions of respondents to dismiss the
petition and amended petition for lack of standing, and granted the
motions of respondents to dismiss the petition in proceeding No. 2 and
the amended petition in proceeding No. 1, except insofar as it alleged
that respondents violated the performance bond provisions of General
City Law §§ 27-a (7) and 33 (8) (a).

        It is hereby ORDERED that the judgment so appealed from is

unanimously affirmed without costs.

Memorandum: Petitioners Margaret Wooster, Clayton S. "Jay" Burney, Jr., Lynda K. Stephens, and James E. Carr (collectively, Wooster petitioners) and Buffalo Niagara Riverkeeper, Inc. (Riverkeeper) commenced these CPLR article 78 proceedings seeking, among other things, to annul the negative declaration issued by respondent City of Buffalo Planning Board (Planning Board) under the State Environmental Quality Review Act ([SEQRA] ECL art 8) with respect to the proposed construction of Queen City Landing (project) in Buffalo's Outer Harbor area. Respondent Queen City Landing, LLC (QCL), the developer of the project, plans to construct a mixed-use facility that will include a 23-story tower containing nearly 200 residential units. In appeal No. 1, petitioners appeal and QCL cross-appeals from a judgment that denied respondents' motions to dismiss Riverkeeper's petition and the Wooster petitioners' amended petition for lack of standing, and granted respondents' motions to dismiss the petition and amended petition except insofar as the Wooster petitioners claimed that respondents violated the performance bond provisions of General City Law §§ 27-a (7) and 33 (8) (a). In appeal No. 2, the Wooster petitioners appeal from a judgment that granted those parts of respondents' motions to dismiss the Wooster petitioners' performance bond claim. We affirm in both appeals.

Addressing first the cross appeal in appeal No. 1, we reject QCL's contention that petitioners do not have standing to challenge the SEQRA determination. The allegations in the affidavits of petitioners Wooster, Burney and Carr, read in the context of the amended petition (see *Matter of Sierra Club v Village of Painted Post*, 26 NY3d 301, 311 n 4), establish that they engage in "repeated, not rare or isolated use" of the Outer Harbor for recreation, study and enjoyment, thereby showing that the threatened environmental and ecological harm to that area, which includes aquatic and terrestrial wildlife habitats and two nature preserves, "will affect them differently from 'the public at large' " (*Matter of Save the Pine Bush, Inc. v Common Council of City of Albany*, 13 NY3d 297, 305; see *Matter of Long Is. Pine Barrens Socy., Inc. v Central Pine Barrens Joint Planning & Policy Commn.*, 113 AD3d 853, 856). Contrary to QCL's contention, the alleged injuries are " 'real and different from the injur[ies] most members of the public face' " (*Sierra Club*, 26 NY3d at 311, quoting *Save the Pine Bush, Inc.*, 13 NY3d at 306). Furthermore, the threatened environmental and ecological harm to the area caused by the development of the project falls within the zone of interests sought to be protected by SEQRA (see *Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 773; *Long Is. Pine Barrens Socy., Inc.*, 113 AD3d at 856). Inasmuch as at least one of the Wooster petitioners has standing, it is not necessary to address QCL's challenges to any other individual petitioner (see *Matter of Humane Socy. of U.S. v Empire State Dev. Corp.*, 53 AD3d 1013, 1017 n 2, *lv denied* 12 NY3d 701; see also *Saratoga County Chamber of Commerce v Pataki*, 100 NY2d 801, 813, *cert denied* 540 US 1017). Contrary to QCL's further contention, Supreme Court properly concluded that Riverkeeper, through the affidavits of its members, met the requirements to establish organizational standing (see *generally*

*Society of Plastics Indus.*, 77 NY2d at 775; *Long Is. Pine Barrens Socy., Inc.*, 113 AD3d at 856).

On the merits, however, we conclude that the court properly dismissed the petition and amended petition. Contrary to petitioners' contention in appeal No. 1, the Planning Board was properly designated as the lead agency (*see generally* 6 NYCRR 617.2 [u]; *Matter of Coca-Cola Bottling Co. of N.Y. v Board of Estimate of City of N.Y.*, 72 NY2d 674, 680). There is a conflict between that part of the Buffalo City Code providing that respondent City of Buffalo Common Council (Common Council) had an "[a]utomatic designation of lead agency" for actions that, like this project, are undertaken within the Buffalo Coastal Special Review District (Buffalo City Code § 168-7 [A] [2] [d]), and that part of the Buffalo City Code automatically designating the Planning Board as lead agency for actions undertaken for subdivision developments and site plan review (*see* § 168-7 [A] [1] [a], [b]). Although arguably either the Common Council or the Planning Board could have been designated as the lead agency, the Planning Board had oversight of subdivision approval and site plan review, and was responsible for preparing a report of recommendations to the Common Council on QCL's application for a "restricted use permit" describing "considerations involving air and water quality, coastal management, flood hazards and environmental impact of the proposed uses" (§ 511-67 [A] [4]; *see* § 511-55 [C]). Under these circumstances, the Planning Board was properly designated lead agency (*see Matter of Schodack Concerned Citizens v Town Bd. of Town of Schodack*, 148 AD2d 130, 134, *lv denied* 75 NY2d 701; *cf. Matter of Price v Common Council of City of Buffalo*, 3 Misc 3d 625, 629-632; *see also* ECL § 8-0111 [6]).

Contrary to petitioners' further contention, the court properly concluded that the Planning Board did not abdicate its responsibilities as lead agency. Although members of the strategic planning department from respondent City of Buffalo (City) filled out part of the full environmental assessment form and prepared the negative declaration, the Planning Board was entitled to rely on the information provided by such experts, and the record establishes that it "fully retained and exercised its role as the lead agency assessing the environmental impact of the [project]" (*Akpan v Koch*, 75 NY2d 561, 575; *see Matter of Mombaccus Excavating, Inc. v Town of Rochester, N.Y.*, 89 AD3d 1209, 1211-1212, *lv denied* 18 NY3d 808). We reject petitioners' contention that the Planning Board improperly deferred its review of site contamination to other agencies (*cf. Matter of Penfield Panorama Area Community v Town of Penfield Planning Bd.*, 253 AD2d 342, 349-350).

We also reject petitioners' contention that the Planning Board failed to comply with the requirements of SEQRA in issuing the negative declaration. The record establishes that the Planning Board took the requisite hard look and provided a reasoned elaboration of the basis for its determination regarding the potential impacts of the project on aesthetic resources and community character, particularly with respect to the height of the building (*see Matter of Frigault v Town of Richfield Planning Bd.*, 107 AD3d 1347, 1350; *Matter of Schweichler v Village of Caledonia*, 45 AD3d 1281, 1283, *lv denied* 10

NY3d 703); migratory birds, especially in light of the project's conformance with accepted governmental guidelines to mitigate bird impacts (cf. Matter of Wellsville Citizens for Responsible Dev., Inc. v Wal-Mart Stores, Inc., 140 AD3d 1767, 1769; see generally Matter of Granger Group v Town of Taghkanic, 77 AD3d 1137, 1142-1143, lv denied 16 NY3d 781; Matter of East End Prop. Co. #1, LLC v Kessel, 46 AD3d 817, 822, lv denied 10 NY3d 926); and traffic (see Wellsville Citizens for Responsible Dev., Inc., 140 AD3d at 1768-1769; Matter of Schaller v Town of New Paltz Zoning Bd. of Appeals, 108 AD3d 821, 823). The Planning Board's consideration of the contaminant remediation and stormwater management components of the project, which would minimize pollutants running off into the lake, supports its determination that "[n]o other potentially significant impacts to plants or animals were identified," which would include impacts on aquatic wildlife. Furthermore, to the extent that the project's potential impacts on aquatic wildlife were not specifically discussed in the negative declaration, it is well established that " 'the lead agency need not consider every conceivable [environmental] impact' " (Matter of Ellsworth v Town of Malta, 16 AD3d 948, 950; see Save the Pine Bush, Inc., 13 NY3d at 307; Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417). The record thus establishes that the Planning Board complied with the requirements of SEQRA in issuing the negative declaration and, contrary to petitioners' further contention, we conclude that the "designation as a type I action does not, per se, necessitate the filing of an environmental impact statement . . . , nor was one required here" (Matter of Mombaccus Excavating, Inc., 89 AD3d at 1211).

     Petitioners also contend that the rezoning of the project site from industrial to commercial use was arbitrary and capricious because QCL unreasonably delayed for eight years before complying with the June 2008 conditional rezoning resolution that provided that the rezoning would not be effective until QCL filed a certified copy of the resolution with the Erie County Clerk's Office. We reject that contention. Here, the resolution did not specify a time for compliance, and QCL has not sought nor received an open-ended exemption from the condition (cf. Matter of Gjerlow v Graap, 43 AD3d 1165, 1168). Rather, in conjunction with its present plan for the project, QCL complied with the condition by filing a certified copy of the resolution with the Erie County Clerk in April 2016. Petitioners' contention provides no basis upon which to conclude that the rezoning was affected by an error of law, was arbitrary and capricious, or an abuse of discretion (see generally CPLR 7803 [3]).

     We further conclude that, contrary to petitioners' contention, the Common Council's issuance of the restricted use permit to QCL, which is entitled to great deference, has a rational basis, is not arbitrary and capricious, and is supported by substantial evidence (see Buffalo City Code § 511-55; see also §§ 511-41 [A]; 511-67 [A], [C]; see generally Matter of North Shore F.C.P., Inc. v Mammina, 22 AD3d 759, 759-760). Petitioners also contend that the restricted use permit for a 23-story building violated the City's "Green Code," i.e., the Unified Development Ordinance (UDO), which was enacted during the

pendency of this appeal, and provides that the project is situated in a zone that does not permit towers and has a maximum building height of six stories.  We reject that contention.  The ordinance provides that where, as here, a previously granted approval was lawfully issued prior to the effective date of the UDO, the action authorized thereby may be undertaken.

Finally, contrary to the contention of the Wooster petitioners in appeal No. 2, we conclude that the court properly dismissed their claim that respondents violated the performance bond provisions of General City Law §§ 27-a (7) and 33 (8) (a).

Entered:  May 5, 2017                          Frances E. Cafarell
                                               Clerk of the Court