*854 This matter involves a parcel of real property located within the “core preservation area” of the Long Island Central Pine Barrens. The property is also located within a residentially zoned area of the Town of Southampton. A predecessor in interest of the respondent JCJC Holding Company, Inc. (hereinafter JCJC), purchased the property in 1970 and constructed a 3,354-square-foot brick building on it, which it leased to the New York State Police (hereinafter the State Police) for use as barracks. The area surrounding the property primarily consists of wooded, public, open space managed by the Suffolk County Department of Parks, Recreation and Conservation. JCJC purchased the property in 2003 and continued leasing it to the State Police until 2008, at which point the State Police vacated the building and JCJC began using the property to operate a commercial landscaping and horticultural services business. At some subsequent time, JCJC was notified that this use was not consistent with the underlying zoning and, in November 2010, it applied to the Town of Southampton Zoning Board of Appeals (hereinafter the ZBA) for a variance to continue utilizing the property for a commercial use. Since the property was located within the Central Pine Barrens “core preservation area,” the ZBA referred the matter to the respondent Central Pine Barrens Joint Planning and Policy Commission (hereinafter the Commission) as an “involved agency” pursuant to the State Environmental Quality Review Act (ECL art 8; hereinafter SEQRA). The Commission assumed lead agency status for purposes of SEQRA.
In March 2011, JCJC applied to the Commission for an extraordinary hardship waiver pursuant to ECL 57-0121 (10) and 57-0123 (3) (a) to permit it to continue to use the existing facility to operate its business. In its extraordinary hardship waiver application, JCJC argued that its proposed utilization of the parcel constituted a reduction in intensity of use from the former round-the-clock use of the property for State Police barracks, since JCJC would store a limited number of vehicles on the property, there would be no expansion of the existing building or parking lot, and the enterprise would only operate during normal business hours. The Commission held a public hearing on the issue of JCJC’s waiver application, at which Richard Amper, appearing in his capacity as Executive Director of the petitioner Long Island Pine Barrens Society, Inc. (hereinafter the Society), argued that the hardship sought to be alleviated by *855 JCJC was self-created and, therefore, the hardship waiver application should be denied. In a determination dated June 15, 2011, the Commission granted JCJC the waiver.
The Society and Amper, in his capacity as the Society’s Executive Director and in his individual capacity (hereinafter together the petitioners), commenced this proceeding pursuant to CPLR article 78 to review the Commission’s determination. In their verified petition, the petitioners averred that the Society is a not-for-profit corporation, whose mission, among other things, is to support research of the Pine Barrens, to disseminate information to the general public regarding the Pine Barrens, and to support the preservation of the Pine Barrens “on a forever-wild basis.” The Society has approximately 3,000 members and is a voting member of the Central Pine Barrens Advisory Committee, which was created by ECL 57-0119 (9). According to the petition and Amper’s accompanying affidavit, “[i]n his professional capacity, [Amper] takes residents and policy makers through the Core Preservation Area of the Pine Barrens to afford an understanding of the significance of the Pine Barrens Ecosystem.” Further, “[a]s an individual, [Amper] was the leading activist in the creation of the Pine Barrens Protection Act and Comprehensive Land Use Plan.”
The Supreme Court denied the CPLR article 78 petition on the ground that the petitioners lacked standing to maintain the proceeding. The court further held, in the alternative, that the challenged determination was not arbitrary and capricious. This appeal ensued.
Contrary to JCJC’s initial contention, the petitioners’ notice of appeal, which recites that they appeal “from a Judgment. . . dismissing [the] Petition due to lack of standing,” does not limit their appeal solely to the issue of standing. CPLR 5515 provides that a notice of appeal “shall designate the party taking the appeal, the judgment or order or specific part of the judgment or order appealed from and the court to which the appeal is taken” (CPLR 5515 [1]). This requirement is jurisdictional (see Rich v Manhattan Ry. Co., 150 NY 542, 546 [1896]), and “[b]y taking an appeal from only a part of a judgment or order, a party waives its right to appeal from the remainder thereof’ (City of Mount Vernon v Mount Vernon Hous. Auth., 235 AD2d 516, 517 [1997]). Here, however, the notice of appeal contains no words of limitation or other language expressly or implicitly limiting the appeal to only a specific part of the judgment appealed from (cf. id.; cf. also Levitt v Levitt, 97 AD3d 543, 545 [2012]; Boyle v Boyle, 44 AD3d 885, 885-886 [2007]). Rather, the reference to a lack of standing in the notice of appeal simply constitutes *856 language describing the judgment, and does not limit the issues on the appeal.
With regard to the issue of standing, the Supreme Court erred in holding that the petitioners lacked standing to challenge the determination. Whether an organization or association has standing involves the application of the three-pronged test set forth in Society of Plastics Indus. v County of Suffolk (77 NY2d 761 [1991]). As pertinent to this appeal, the first prong of that test requires that the organization or association demonstrate that “one or more of its members would have standing to sue” as an individual (id. at 775). An individual has standing where he or she “would suffer direct harm, injury that is in some way different from that of the public at large” (id. at 774) and “the in-fact injury of which [he or she] complains . . . falls within the ‘zone of interests,’ or concerns, sought to be promoted or protected by the statutory provision under which the agency has acted” (id. at 773, quoting Lujan v National Wildlife Federation, 491 US 871,883 [1990]; see Roulan v County of Onondaga, 21 NY3d 902 [2013]). In Matter of Save the Pine Bush, Inc. v Common Council of City of Albany (13 NY3d 297 [2009]), the Court of Appeals held that, in land-use and environmental cases, “a person who can prove that he or she uses and enjoys a natural resource more than most other members of the public has standing ... to challenge government actions that threaten that resource” (id. at 301). Here, the petitioners established that Amper, in both his individual and professional capacities, uses and enjoys the Pine Barrens to a greater degree than most other members of the public. The fact that Amper lives some distance from the property in question is not dispositive (see id. at 305; see also Matter of Shepherd v Maddaloni, 103 AD3d 901, 903 [2013]; Matter of Brunswick Smart Growth, Inc. v Town of Brunswick, 73 AD3d 1267, 1268 [2010]). Further, the petitioners established that the threatened injury to Amper caused by development within the core preservation area of the Central Pine Barrens falls within the zone of interests sought to be protected by the Long Island Pine Barrens Protection Act of 1993 (L 1993, ch 262 [hereinafter the Act]) (see Society of Plastics Indus. v County of Suffolk, 11 NY2d at 773). Thus, Amper has standing to sue individually, and his standing satisfied the first prong of the test for the Society’s organizational standing. The Society meets the second and third prongs of the organizational standing test, namely that its interests in the instant proceeding are germane to its purposes, and that “neither the asserted claim nor the appropriate relief requires the participation of the individual members.” Therefore, the Society also has standing to challenge the Commission’s determination (id. at 775).
*857 However, the petition was properly denied on the merits. The Act was adopted to protect “[t]he Central Pine Barrens, a 100,000 acre area of scrubby pine trees and porous soil” which “sits atop and is an integral part of Long Island’s aquifer — the sole natural source of drinking water for over 2.5 million Long Islanders” (Governor’s Approval Mem, reprinted in 1993 McKinney’s Session Laws of NY at 2888). The Act, inter alia, created the Commission as a regional planning agency, and directed the creation of a comprehensive land use plan to guide development in the Pine Barrens area (see id.). Further, the Act divides all land within the Pine Barrens into two legally significant areas: (1) the “core preservation area,” in which development is generally prohibited, and (2) the “compatible growth area,” in which development is generally more permissible, but must take place in a responsible and ecologically sound manner (see ECL 57-0107 [11], [12]; see 57-0109, 57-0121 [4]). The Central Pine Barrens Comprehensive Land Use Plan (hereinafter Comprehensive Plan) states: “Allowable uses within the Core Preservation Area shall be limited to those operations or uses which do not constitute development, or [for which] hardship exemptions [are] granted by this Commission pursuant to the Act” (Comprehensive Plan § 5.2). “Development” is broadly defined by the Act to mean “the performance of any building activity or mining operation, the making of any material change in the use or intensity of use of any structure or land and the creation or termination of rights of access or riparian rights” (ECL 57-0107 [13] [emphasis added]). There is no dispute in the instant matter that JCJC’s proposed use of the subject property, located in the “core preservation area,” though more limited than the use for barracks, nevertheless constitutes development since the proposed use constituted a material change in the use of the subject property. Thus, an extraordinary hardship waiver was required (see Comprehensive Plan § 5.2).
Pursuant to ECL 57-0123 (3) (a), the Commission may “waive strict compliance with [the Comprehensive Plan] or with any element or standard contained therein, for an application for development of any person, upon finding that such waiver is necessary to alleviate hardship for proposed development in the core preservation area according to the conditions and finding of extraordinary hardship or compelling public need pursuant to [ECL 57-0121 (10)]” and where the “application is consistent with the purposes and provisions of this article and would not result in substantial impairment of the resources of the Central Pine Barrens area.” An application for a waiver on the ground of extraordinary hardship may be approved only if the application satisfies the requirements of ECL 57-0121 (10) (a) and (c).
*858 Here, the petitioners contend that JCJC’s application did not satisfy ECL 57-0121 (10) (a) because the statute prohibits the granting of a waiver to an applicant whose hardship was self-created, and that JCJC acquired the property in 2003 with constructive notice of the restrictions on development imposed by the Act. ECL 57-0121 (10) (a) (iii) requires that the applicant for an extraordinary hardship waiver establish that the hardship results from “unique circumstances peculiar to the subject property which . . . [a]re not the result of any action or inaction by the applicant or the owner or his or her predecessors in title including any transfer of contiguous lands which were in common ownership on or after June 1, 1993.” Under the circumstances presented here, the Commission’s determinations that JCJC established the existence of unique circumstances, and that any hardship was not self-created, were not arbitrary and capricious. Consequently, the hardship waiver was not legally prohibited by ECL 57-0121 (10) (a) (iii), and the Commission’s determination to grant the extraordinary hardship variance to permit the beneficial use of the property at a less intensive level than that at which the previous user employed the property was not affected by an error of law or arbitrary and capricious {see CPLR 7803 [3]). Accordingly, the Supreme Court correctly denied the petition and, in effect, dismissed the proceeding. Mastro, J.E, Chambers, Lott and Miller, JJ., concur.