Matter of Hart v Town of Guilderland Indus. Dev. Agency (2024 NY Slip Op 03118)

Matter of Hart v Town of Guilderland Indus. Dev. Agency

2024 NY Slip Op 03118

Decided on June 6, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 6, 2024

CV-23-1696
[*1]In the Matter of Thomas Hart et al., Petitioners,
v
Town of Guilderland Industrial Development Agency et al., Respondents.

Calendar Date:April 22, 2024

Before:Garry, P.J., Clark, Ceresia, Fisher and Powers, JJ.

James Bacon, New Paltz, for petitioners.
Hodgson Russ LLP, Albany (Charles W. Malcomb of counsel), for Town of Guilderland Industrial Development Agency, respondent.
James P. Melita, Town Attorney, Guilderland, for Town of Guilderland, respondent.
Phillips Lytle LLP, Buffalo (Ryan A. Lema of counsel), for Crossgates Releaseco, LLC and others, respondents.

Garry, P.J.
Proceeding initiated in this Court pursuant to EDPL 207 to review a determination of respondent Town of Guilderland Industrial Development Agency condemning five discontinued public roads and certain deed restrictions held by petitioner 1667 Western Avenue, LLC.
The underlying facts of this case are more fully set forth in this Court's prior decisions in two related matters, in which this Court twice approved of the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]) review of the same project at issue in this proceeding, conducted by the Town of Guilderland Planning Board (see Matter of Save the Pine Bush, Inc. v Town of Guilderland, 205 AD3d 1120, 1126-1127 [3d Dept 2022]; Matter of Hart v Town of Guilderland, 196 AD3d 900, 913-914 [3d Dept 2021]). Pertinent here, in 2018, the Town Board of respondent Town of Guilderland established a Transit Oriented Development District to "incentivize development." The transit district encompasses Crossgates Mall — located in the Town of Guilderland, Albany County — allowing for "regional shopping, entertainment, and employment centers," and prohibiting single-family dwellings. In establishing the district, it was intended that a portion thereof would be occupied by Costco Wholesale Corporation (hereinafter Costco), which property would include an 18-pump fueling station. In apparent furtherance of this plan, in August 2022 and February 2023, public roads near the project area were discontinued pursuant to Highway Law § 207.
In March 2023, respondent Crossgates Releaseco, LLC (hereinafter Crossgates) submitted an application to respondent Town of Guilderland Industrial Development Agency (hereinafter the IDA) requesting that the IDA use its power of eminent domain to acquire portions of these five discontinued public roads in the Town of Guilderland, and to condemn certain deed restrictions which purported to restrict commercial development at the project site. Petitioners Thomas Hart and Lisa Hart are Guilderland residents and own a home "approximately 245 feet" from the proposed project site. Petitioner 1667 Western Avenue, LLC (hereinafter 1667) owns property located at 1667 Western Avenue and a gasoline distributor operates a gas station on 1667's property; the deed to 1667's property includes provisions — referred to as deed restrictions — limiting commercial development on the proposed project site.
A public hearing was held. Petitioners argued at this hearing that the project did not serve a public purpose. Thereafter, the IDA issued a determination authorizing the use of eminent domain as to the subject discontinued roads and deed restrictions, finding that neither served a public use and that the acquisition of and extinguishment of interest in same would "maximize the public uses, benefits, and purposes associated with the [p]roject." In rendering its determination, the IDA incorporated the Planning Board's environmental impact statement completed in connection with the aforementioned [*2]SEQRA review and "conducted an extensive discussion of the SEQRA Record . . . and the general effect of the [p]roject in its entirety on the environment and residents of the locality." Petitioners commenced this proceeding in this Court pursuant to EDPL 207 seeking to annul the IDA's determination on the basis that the condemnation was in violation of the EDPL and SEQRA. Respondents answered.
Initially, pursuant to EDPL 207 (A), only those "aggrieved by the condemnor's determination and findings" have standing to seek judicial review thereof. A condemnee is defined under the EDPL as "the holder of any right, title, interest, lien, charge or encumbrance in real property subject to an acquisition or proposed acquisition" (EDPL 103 [C]). Petitioners have not demonstrated their status as condemnees for purposes of challenging the IDA's condemnation of the subject roads, which are owned by the Town and were previously discontinued pursuant to Highway Law § 207 (compare Matter of Sierra Club v Village of Painted Post, 26 NY3d 301, 310 [2015]; Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d 297, 305 [2009]). "Thus all that petitioners are entitled to under [the] EDPL is a properly conducted hearing held on proper notice" (Matter of East Thirteenth St. Community Assn. v New York State Urban Dev. Corp., 84 NY2d 287, 295 [1994]). Given that such hearing was held, they do not have EDPL standing as to that issue (see id.; Matter of McCarthy v Town of Smithtown, 19 AD3d 695, 696 [2d Dept 2005]; Matter of Hugh Gassner Fire Co. v South Spring Val. Fire Dist., 294 AD2d 502, 502 [2d Dept 2002]).[FN1] As to the IDA's condemnation of the deed restrictions, however, although the Harts were unable to demonstrate their status as condemnees in this regard, 1667 may seek review of that part of the IDA's determination given its undisputed status as an owner of property subject to said restrictions (see Matter of Faith Temple Church v Town of Brighton, 17 AD3d 1072, 1072-1073 [4th Dept 2005]; compare Matter of Allied Healthcare Prods., Inc. v Stuyvesant Falls Hydro Corp., 30 AD3d 647, 648 [3d Dept 2006]).
Turning to the arguments remaining before us, "[t]he scope of this Court's review of a condemnor's EDPL 204 determination is limited to whether (1) the proceeding was constitutionally sound; (2) the condemnor had the requisite authority; (3) its determination complied with SEQRA and EDPL article 2; and (4) the acquisition will serve a public use" (Matter of Hudson Val. Hous. Dev. Fund Co., Inc. v County of Ulster, 183 AD3d 974, 975 [3d Dept 2020] [internal quotation marks and citation omitted], lv denied 37 NY3d 901 [2021]; see EDPL 207 [C] [1]-[4]). "The party challenging the condemnation bears the burden of establishing that the determination was without foundation and baseless, or that it was violative of the applicable statutory criteria" (Matter of PSC, LLC v City of Albany Indus. Dev. Agency, 200 AD3d 1282, 1284 [3d Dept 2021] [internal [*3]quotation marks, brackets, ellipsis and citations omitted], lv denied 38 NY3d 909 [2022]).
Here, 1667 contends that the IDA failed to comply with the requirements of the EDPL in condemning the deed restrictions on the basis that the determination does not serve a legitimate public purpose. "The principal purpose of article 2 of the EDPL is to ensure that a condemnor does not acquire property without having made a reasoned determination that the condemnation will serve a valid public purpose" (Matter of National Fuel Gas Supply Corp. v Schueckler, 35 NY3d 297, 303 [2020] [internal quotation marks, ellipsis, brackets, emphasis and citation omitted]). What constitutes a public purpose is defined broadly and "encompasses any use which contributes to the health, safety, general welfare, convenience or prosperity of the community" (Matter of 225 Front St., Ltd. v City of Binghamton, 61 AD3d 1155, 1157 [3d Dept 2009] [internal quotation marks and citations omitted]; accord Matter of Johnson v Town of Caroga, 162 AD3d 1353, 1355 [3d Dept 2018]; see Matter of Court St. Dev. Project, LLC v Utica Urban Renewal Agency, 188 AD3d 1601, 1602-1603 [4th Dept 2020]), and "[a]reas of economic underdevelopment and stagnation may be considered blighted so as to support the taking of vacant and underutilized properties located therein" (Matter of Court St. Dev. Project, LLC v Utica Urban Renewal Agency, 188 AD3d at 1602).
Upon our review, we are constrained to find that the condemnation of the deed restrictions was for a valid public purpose. The record demonstrates that the single-family homes on the affected properties were vacant and in a state of deterioration and that public roads in the project area had been discontinued. Moreover, as a result of the Town's comprehensive plan which established the transit district in 2018 and encouraged redevelopment in the area, the single-family homes became nonconforming. As such, the IDA had support for its determination that the residential deed restrictions were "no longer consistent with the use and character of the area." It does bear noting that, as petitioners assert, the record reflects that the neighborhood was both occupied and well cared for as recently as 2011. The properties were thereafter acquired by Crossgates and neglected. Although petitioners further assert that Crossgates should have been subjected to penalties for this apparently deliberate neglect, no such actions appear to have been sought or undertaken — and at this juncture, there is no remedy to be imposed; even assuming that there was a deliberate and intentional disregard of the properties, this does not bar the application, based upon the current conditions.
Contrary to 1667's contentions, we do not find that merely because the condemnation of the deed restrictions directly benefits private businesses that the project is not of public benefit (see Matter of 225 Front St., Ltd. v City of Binghamton, 61 AD3d at 1157). The design of the project bolsters [*4]the Town's greater plan to incentivize local economic development in this region. We accept the well-settled law that economic development may support a finding that a taking serves a valid public purpose (see generally Matter of Goldstein v New York State Urban Dev. Corp., 13 NY3d 511, 524 [2009]; Yonkers Community Dev. Agency v Morris, 37 NY2d 478, 481 [1975]). The record here supports the IDA's finding that the project would bring visitors to the region, create jobs and increase tax revenue. Accordingly, we discern no error in the IDA's determination that a public purpose is served by the condemnation of the deed restrictions (see Matter of PSC, LLC v City of Albany Indus. Dev. Agency, 200 AD3d at 1286-1287; Matter of United Ref. Co. of Pa. v Town of Amherst, 173 AD3d 1810, 1811 [4th Dept 2019], lv denied 34 NY3d 913 [2020]; Matter of City of New York v Yonkers Indus. Dev. Agency, 170 AD3d 1003, 1004 [2d Dept 2019]; see also Matter of Kaur v New York State Urban Dev. Corp., 15 NY3d 235, 259 [2010], cert denied 562 US 1108 [2010]; compare Matter of Gabe Realty Corp. v City of White Plains Urban Renewal Agency, 195 AD3d 1020, 1022 [2d Dept 2021]).
Finally, 1667 argues that the IDA failed to comply with SEQRA when it relied upon the Planning Board's final environmental impact statement in rendering its determination, as plans to condemn the deed restrictions were not disclosed until after that SEQRA review had concluded. Initially, we reject the IDA's contention that such claim is barred by the doctrines of res judicata or collateral estoppel given our decisions in two prior related appeals (Matter of Save the Pine Bush, Inc. v Town of Guilderland, 205 AD3d 1120; Matter of Hart v Town of Guilderland, 196 AD3d 900), as the IDA was not a party thereto and there is no indication that it was in privity with one, nor was the challenged determination the subject of those proceedings (see Whitney Lane Holdings, LLC v Don Realty, LLC, 130 AD3d 1218, 1220 [3d Dept 2015]). Nevertheless, 1667's claim is without merit. "[A]ll involved agencies must rely upon the [final environmental impact statement] as the basis for their review of the environmental impacts that they are required to consider in connection with subsequent permit applications" (Matter of Guido v Town of Ulster Town Bd., 74 AD3d 1536, 1537 [3d Dept 2010]; see Troy Sand & Gravel Co., Inc. v Town of Nassau, 125 AD3d 1170, 1173 [3d Dept 2015]; 6 NYCRR 617.6 [b] [3] [iii]). In its findings, the IDA incorporated the final environmental impact statement completed by the Planning Board, the lead agency (see 6 NYCRR 617.2 [v]; 617.6 [b] [3] [iii]), and conducted a discussion of the SEQRA record, including the final impact statement and the effect of the project upon the environment and residents based upon the application at issue here. Accordingly, the IDA satisfied the requirements of SEQRA in rendering its determination (see 6 NYCRR 617.11 [d]; Troy Sand & Gravel Co., Inc. v Town of Nassau, 125 AD3d [*5]at 1173; Matter of Guido v Town of Ulster Town Bd., 74 AD3d at 1537).
Petitioners' remaining contentions, to the extent not expressly addressed herein, are either not properly before us or found to be lacking in merit.
Clark, Ceresia, Fisher and Powers, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: As petitioners lack standing, the arguments asserted relative to the public trust doctrine are not reached; further, this issue is not properly before us as it was not raised in the petition (see Matter of Tadasky Corp. v Village of Ellenville, 45 AD3d 1131, 1132 [3d Dept 2007]).